IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAYMON PATRIC DAVALOU,  No. 2:15-cv-2562-CMK

    Plaintiff,

 vs.  ORDER

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

                                   /

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 13), and defendant's cross-motion for summary judgment (Doc. 17).

### I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 11, 2011 (child's insurance benefits) and August 31, 2011 (supplemental security income), alleging an onset of disability on June 12, 2003, due to disabilities including bipolar disorder, obsessive compulsive disorder,

1

affective mood disorder, organic mental disorders (Certified administrative record ("CAR") 61, -62, 74-75, 87-90, 100-01, 137-38, 223). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on November 13, 2013, before Administrative Law Judge ("ALJ") Dante M. Alegre. In a February 27, 2014, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

1. Born February 9, 1993, the claimant had not attained age 22 as of June 1, 2003, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since June 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |     |                                                                                                                                                                                                                                                                                                           |
|---|-----|---|
| 3. | | The claimant has the following severe impairments: bipolar disorder and personality disorder (20 CFR 404.1520(c) and 416.920(c)). |
| 4. | | The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5. | | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple repetitive tasks, and have occasional contact with supervisors, co-workers and the public. He can manage simple changes at work. |
| 6. | | The claimant has no past relevant work (20 CFR 404.1565 and 416.965). |
| 7. | | The claimant was born on February 9, 1993 and was 10 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963). |
| 8. | | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9. | | Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 40431568 and 416.968). |
| 10. | | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 11. | | The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(CAR 12-23). After the Appeals Council declined review on October 19, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is

more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

Plaintiff argues the ALJ erred in two ways: 1) the ALJ failed to obtain vocational expert testimony in light of significant non-exertional limitations; and 2) the ALJ erroneously discounted the medical opinion evidence and credibility based on daily activities which fail to demonstrate sustained ability to perform work.

Plaintiff argues the ALJ erred in failing to call a vocational expert (VE) to testify at the administrative hearing, and in using the Medical-Vocational Guidelines ("Grids") without the aid of a vocational expert. Defendant counters that the use of the Grids was appropriate as plaintiff's non-exertional limitations did not require a vocational expert because the limitations were not significant and sufficiently severe.

///

The Medical-Vocational Guidelines provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may rely on the Grids when a

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988). The Grids do "provide for the evaluation of claimants asserting both exertional and non-exertional limitations," unless "a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986), Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). For the grids to be inadequate, the nonexertional limitation must be " 'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.' " Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting Burkhart, 856 F.2d at 1340). "However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question." Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(e)); see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.2001) (determining the ALJ committed clear legal error by relying entirely on the grids to determine whether there was work the claimant was capable of performing where the claimant had no severe physical impairments and her only severe impairments were psychiatric).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart, 587 F.2d at 1341.

Here, the ALJ determined plaintiff's severe impairments consisted of bipolar disorder and personality disorder. Plaintiff did not assert any physical impairments, nor did the ALJ find any severe physical impairments. The ALJ determined plaintiff had the RFC to perform a full range of work at all exertional levels. The only limitations the ALJ found were

non-exertional based on plaintiff's non-physical impairments, amounting to the limitations that he can perform simple repetitive tasks, and have occasional contact with supervisors, co-workers and the public, and can manage simple changes at work. Based on this RFC, containing only non-exertional limitations, the ALJ utilized the Grids and determined there are jobs that exist in significant numbers in the national economy plaintiff can perform. The ALJ rationalized this determination in reasoning that the non-exertional limitations "have little or no effect on the occupational based of unskilled work at all exertional levels." (CAR 22). While the ALJ's reasoning might be accurate, he was precluded from utilizing the Grids to make that determination after assessing plaintiff with only non-exertional limitations. See Holohan, 246 F.3d 1195.

The majority of cases the parties cite to support their arguments are not applicable as they address claimants with both exertional and non-exertional limitations. Under that situation, the undersigned agrees that whether or not to obtain the testimony of a vocational expert depends on whether the non-exertional limitations are " 'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.' " Hoopai, 499 F.3d at 1075. However, in this case the are no exertional limitations assessed. Thus, a consideration as to whether the non-exertional limitations are sufficiently severe to limit the use of the Grids is unnecessary; the Grids are simply not applicable to claimants with only non-exertional limitations. The undersigned therefore finds the ALJ committed reversible error by failing to utilize the testimony of a vocational expert.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ committed reversible error by relying on the Grids and not utilizing the testimony of a vocational expert in determining there are jobs that exist that plaintiff is capable of performing. Accordingly, IT IS HEREBY ORDERED that:

  1. Plaintiff's motion for summary judgment (Doc. 13) is granted;

2. Defendant's cross-motion for summary judgment (Doc. 17) is denied;

3. This matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 30, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE